IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 12, 2018 Session

## LISA A. BOYD v. BNSF RAILWAY COMPANY

**Appeal from the Circuit Court for Shelby County**
**No. CT-000605-15  Felicia Corbin Johnson, Judge**

_____

### No. W2017-02189-COA-R3-CV

_____

This is an FELA[1] case arising out of an accident that occurred at the railroad's intermodal facility in which a railroad employee was crushed by a container box being lifted off of a holster truck.  The jury entered a verdict in favor of the employee, determining she was zero percent at fault for the accident, despite allegations that she had failed to set the holster truck brakes.  The railroad moved for a new trial, raising several evidentiary issues and asserting that the jury's failure to find the employee contributorily negligent was against the clear weight of the evidence.  The trial court denied the motion.  We affirm the trial court's order on jury verdict, as remitted.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which THOMAS R. FRIERSON, II, and KENNY ARMSTRONG, JJ., joined.

Marianne M. Auld and Jody S. Sanders, Fort Worth, Texas and John G. Wheeler, Tupelo, Mississippi, for the appellant, BNSF Railway Company.

Jeffrey E. Chod, Denver, Colorado, and Robert M. Frey, Ridgeland, Mississippi and Stephen R. Leffler, Memphis, Tennessee, for the appellee, Lisa A. Boyd.

### OPINION

#### BACKGROUND AND PROCEDURAL HISTORY

This case arises out of an accident that occurred at BNSF Railway Company's ("Defendant") intermodal facility in Memphis, Tennessee.  On September 15, 2014, Lisa

_____

[1] The Federal Employers' Liability Act ("FELA"), 45 U.S.C. §51 et seq., is a federal statute enacted in 1908 to protect and compensate railroad workers injured on the job.

Boyd ("Plaintiff") and Matt Carnell, both intermodal equipment operators,[2] were working the night shift as a holster truck driver and a production crane operator, respectively. Plaintiff pulled the truck into a spot adjacent to Mr. Carnell's crane for him to remove the shipping container from the truck chassis. Plaintiff then exited the truck and took a break. It is a major point of contention whether Plaintiff set the parking brakes as she exited the truck. After Plaintiff had exited the truck, Mr. Carnell brought the crane head down and latched onto the shipping container, but, as he began to pull back, the entire truck moved backwards because the container would not disengage from the chassis. Plaintiff signaled for Mr. Carnell to stop and to put pressure back down onto the truck. Once Mr. Carnell did so, the truck stopped moving. Plaintiff then attempted to reenter the truck. While standing at the rear of the cab, she "heard a screech," and then the shipping container "flew up" and hit her, crushing her between the container and cab of the truck and causing serious injuries.

Plaintiff filed this action on February 11, 2015 in the Shelby County Circuit Court. In her Complaint, pursuant to the Federal Employers' Liability Act ("FELA"), Plaintiff claimed that her injuries were caused by Defendant's negligence and sought $5,930,820.00 in damages. Pursuant to a December 2, 2016 scheduling order, the trial court set April 28, 2017 as "[t]he deadline for filing all motions other than motions in limine, including dispositive motions and motions regarding expert witnesses[.]" Plaintiff never filed any such motions.

The case was tried before a jury, beginning on June 19, 2017. At trial, a major issue of contention between the parties was whether Plaintiff had set the brakes of the holster truck before exiting the truck. Throughout her trial testimony, Plaintiff maintained that she could not remember whether she set the brakes before she exited the truck. Mr. Carnell, however, recounted different versions of the story on separate occasions. For example, in his trial testimony, Mr. Carnell claimed that he set both brakes when he got down from the crane to assist Plaintiff and entered the truck. During cross-examination, however, Plaintiff's counsel brought to Mr. Carnell's attention certain photographs that were taken soon after the accident by Katherine Foster—a claims representative for Defendant—showing that only one of the holster truck brakes had been set. Additionally, Plaintiff's attorney also presented Mr. Carnell with his deposition testimony, wherein he claimed that he never set—or even looked at—the brakes. On re-direct, Defendant attempted to offer a subsequent portion of Mr. Carnell's deposition testimony wherein he testified that he did remember setting both brakes in the holster truck. Plaintiff lodged numerous objections, and the trial court eventually excused Mr. Carnell and the jury from the courtroom to discuss the admissibility of this evidence with

---

[2] Intermodal equipment operators are generally trained on three different jobs: (1) driving the holster trucks that carry containers; (2) working as groundsmen during the loading and unloading process; and (3) operating the cranes that load and unload the containers.

both parties.[3]  Ultimately, the trial court sustained Plaintiff's objection, prohibiting Defendant from rehabilitating Mr. Carnell with his deposition testimony.

Later, Defendant called Dr. Steve Arndt to the stand to testify.  Dr. Arndt testified as to his specialization in "human factors," which he described as the study of the "capabilities and limitations of people as they interact with tools, technology, their environment, organizations, and other people and information."  Defendant tendered Dr. Arndt as an expert in the area of human factors and he was received as such without objection.  Defendant then asked Dr. Arndt to "share with us what your opinions were in this case[,]" to which Plaintiff objected.  In the ensuing bench conference, Plaintiff, asserting that Dr. Arndt was about to testify as to whether Plaintiff complied with the rules and policies of her work, argued that he was not qualified to offer such an opinion, noting that Dr. Arndt was tendered as a human factors expert, not a rules expert. Defendant admitted that it had "no quarrel with the substance of the objection[,]" but rather took issue with "the timeliness of it."  The "timeliness" referred to by Defendant concerned the fact that Plaintiff never filed any motion in limine objecting to Dr. Arndt as an expert witness by April 28, 2017—the deadline for such motions as set by the trial court's December 2, 2016 scheduling order.  Ultimately, the trial court again sustained Plaintiff's objection.

At the conclusion of Plaintiff's case-in-chief, Defendant moved for a directed verdict pursuant to Rule 50.01 of the Tennessee Rules of Civil Procedure, which the trial court denied.  Defendant again moved for a directed verdict at the conclusion of all of the evidence, but the trial court again denied the motion.  The jury deliberated and returned its verdict on June 24, 2017, determining that Defendant was negligent in one or more of the particulars alleged by Plaintiff and that such negligence caused or contributed to the damages alleged by Plaintiff.  The jury awarded the Plaintiff a judgment against the

---

[3] In fact, before excusing Mr. Carnell and the jury, the trial court had held two bench conferences in which it cautioned Defendant's counsel about leading Mr. Carnell on re-direct.  During the third bench conference, after more leading objections by Plaintiff's counsel, the trial court stated the following:

> Okay.  We get down to the very end and we have a problem here.  There was leading throughout the whole, pretty much the whole Redirect of [Mr. Carnell.] . . . .
> Did you not realize that you were leading the witness?  He would say one thing, you would – each question you asked would suggest the answer.  And even when he gave a different answer – when he gave an answer, then you would correct him, and then he would say, oh, yes.  But it was clearly contradictory to what he had testified on cross-examination.
> . . . . I mean, I understand that you may know the case, and documents, and things better than him, but you can't substitute your testimony for the witness.

Ultimately, after much deliberation between the parties, the trial court sustained Plaintiff's objection.

Defendant in the amount of $5,021,016.00 and found no comparative fault on the part of the Plaintiff. The trial court entered its Order on Jury Verdict on July 11, 2017.

On July 18, 2017, Plaintiff filed a motion for discretionary costs totaling $18,768.65. On August 10, 2017, pursuant to Rules 50.02, 59.02, and 59.04 of the Tennessee Rules of Civil Procedure, Defendant filed a motion asking the trial court to enter a judgment in accordance with its motion for directed verdict or, in the alternative, to order a new trial or suggest a remittitur. Defendant's motion asserted that the jury's failure to find Plaintiff comparatively negligent was against the clear weight of the evidence, that the trial court erred by excluding testimony by Defendant's expert witness regarding Plaintiff's fault, and that the jury's award of damages was unsupported by the evidence. The trial court conducted a hearing on the motions on October 6, 2017 and, on October 13, 2017, entered its order denying Defendant's motion for judgment in accordance with its motion for directed verdict or in the alternative it's motion for new trial. The trial court did, however, suggest a remittitur of the jury's verdict from $5,021,016.00 to $4,544,573.10 based on the lack of evidence supporting the jury's awards for future loss of earning capacity and future medical expenses, which Plaintiff accepted under protest. Defendant timely appealed.[4]

## ISSUES PRESENTED

The parties raise several issues on appeal; however, we rephrase and consolidate such issues as follows:

1. Whether the trial court erred by denying Defendant's motion for a new trial.

---

[4] The trial court did not reach a conclusion as to Plaintiff's motion for discretionary costs at the October 6, 2017 hearing, and it was not ruled upon in its October 13, 2017 order. After the trial court granted her leave to amend, Plaintiff filed an amended motion for discretionary costs on January 18, 2018, which the trial court granted the next day, awarding Plaintiff discretionary costs in the amount of $17,468.65. This does not affect the timeliness of Defendant's appeal. *See* Tenn. R. Civ. P. 54.04(2) ("The trial court retains jurisdiction over a motion for discretionary costs even though a party has filed a notice of appeal."). Citing Rule 54.04 of the Tennessee Rules of Civil Procedure, this Court has noted:

> Normally, the filing of a notice of appeal places jurisdiction of a case in our court and deprives the trial court of jurisdiction to act further. Any additional matter that needs to be addressed in the trial court must be addressed once the trial court reacquires jurisdiction. A motion for discretionary costs, however, is different; a trial court "retains jurisdiction over a motion for discretionary costs even though a party has filed a notice of appeal." The retention of the issue of discretionary costs does not prevent [a] judgment from being final for purposes of appeal.

*Roberts v. Roberts*, No. E2009-02350-COA-R3-CV, 2010 WL 4865441, at *8 (Tenn. Ct. App. Nov. 29, 2010) (internal citations omitted).

2. Whether the trial court erred by limiting Defendant from introducing a subsequent portion of Mr. Carnell's deposition testimony after Plaintiff impeached him with the same deposition.
3. Whether the trial court erred by excluding portions of Dr. Arndt's expert witness testimony.
4. Whether the trial court erred by failing to determine that the jury's award of $3,000,000 for future pain and suffering damages was excessive and a result of passion and prejudice.

## STANDARD GOVERNING NEW TRIAL DETERMINATIONS IN FELA CASES TRIED IN STATE COURT

As our Supreme Court has recently stated, "[i]n FELA cases, a motion for a new trial is governed by the federal standard, pursuant to which a trial court has the power and duty to order a new trial whenever, in its judgment, this action is required to prevent an injustice." *Payne v. CSX Transp., Inc.*, 467 S.W.3d 413, 440 (Tenn. 2015). As this Court has noted, "[t]he standard federal courts employ in deciding whether to grant a new trial is whether the verdict is against the 'clear weight' of the evidence." *Blackburn v. CSX Transp., Inc.*, No. M2006-01352-COA-R10-CV, 2008 WL 2278497, at *5 (Tenn. Ct. App. May 30, 2008). However, "new trials are not to be granted on the grounds that the verdict was against the weight of the evidence unless that verdict was unreasonable," meaning that "if a reasonable juror could reach the challenged verdict, a new trial is improper." *Id.* at *5-6 (quoting *Tisdale v. Fed. Exp. Corp.*, 415 F.3d 516, 528-29 (6th Cir. 2005)). Accordingly, because the federal standard is applicable and because Federal Rule of Civil Procedure 59 governs federal new trial determinations, we have recognized that, "in order to grant a new trial in an FELA case tried in state court, the trial court must find that the verdict is against the clear weight of the evidence." *Id.* at *16.

## STANDARD OF REVIEW

"In federal court, orders on new trial motions based on sufficiency of the evidence are reviewed on an abuse of discretion standard." *Id.* "A trial court abuses its discretion in its decision on a new trial if the court (a) relies on clearly erroneous findings of facts, (b) improperly applies the law, (c) uses an incorrect legal standard, or (d) is otherwise 'clearly erroneous.'" *Id.* (citing *United States v. Blackwell*, 450 F.3d 737, 768 (6th Cir. 2005)). "In determining whether a trial court has abused its discretion, it is appropriate to look not only to the written opinion, but also any oral ruling in the matter." *Id.* (citing *Fortenberry v. New York Life Ins. Co.*, 459 F.2d 114, 115-16 (6th Cir. 1972)).

## DISCUSSION

## A. Trial Court's Denial of Defendant's Motion for New Trial

Defendant's first assignment of error is that the trial court erred by denying its motion for a new trial. First, Defendant argues that the trial court abused its discretion by failing to conduct a proper review as a thirteenth juror on its motion for new trial. This Court has noted, however, that federal decisions "expressly disclaim" the thirteenth juror description. *See id.* at *7 ("We believe that the differences between the standards are both apparent and significant."); *see also Jordan v. Burlington Santa Fe R.R. Co.*, No. W2007-00436-COA-R3-CV, 2009 WL 112561, at *22 (Tenn. Ct. App. Jan. 15, 2009) ("The *Blackburn* Court explained that the Tennessee standard and the federal standard for reviewing motions for new trial are not the same or even substantially similar."). The *Blackburn* Court expounded upon this distinction: "The standards are quite different since the Tennessee standard uses 'preponderance' of the evidence, while the federal standard requires that the verdict be outweighed by the 'clear' weight of the evidence." *Blackburn*, 2008 WL 2278497, at *7. It continued:

> Under state law, if a judge is "dissatisfied" with a jury verdict then the trial court is at liberty to order a new trial. Under the federal standard, the verdict must be unreasonable. Under state law a court must make an independent decision, while under federal law if a reasonable juror could have reached the verdict, the trial court is to defer.

*Id*. Accordingly, Defendant's argument that the trial court failed to conduct a proper review as a thirteenth juror is unfounded.

The record reflects, however, that the trial court, on several occasions, did refer to itself as the thirteenth juror. The trial court also stated that it made an independent review of the evidence.[5] Such references suggest that the trial court may have applied the Tennessee standard or improperly conflated it with the federal standard. After our review of the record, however, we are of the opinion that the trial court was merely recognizing its duty to review a jury's verdict in a motion for new trial and offering a comparison to the Tennessee standard. Throughout the hearing, the trial court demonstrated that it understood its role was to determine whether the jury's verdict was against the clear weight of the evidence, as did the attorneys.[6]

Even had the trial court applied the Tennessee standard, this Court has noted that such a mistake is irrelevant if the motion for new trial is denied:

---

[5] Stressing the non-independence of the trial court's review under the federal standard, this Court has noted that the trial judge "should not set the verdict aside as against the weight of the evidence merely because, if he had acted as trier of fact, he would have reached a different result; and in that sense he does not act as a thirteenth juror in approving or disapproving the verdict." *Blackburn*, 2008 WL 2278497, at *5 (quoting 6A *Moore's Federal Practice* § 59.08[5] (1996)).

[6] In fact, at the hearing on Defendant's motion for new trial, the trial court stated that, "[i]n FELA cases … a motion for a new trial is governed by the federal standard."

In this case, the trial judge denied the motion for new trial upon finding that the jury's verdict was supported by the preponderance of the evidence. Under the circumstances of this case, it is not necessary to remand the case for the trial judge to reconsider the motion under the federal standard. If the trial judge found that the evidence does not preponderate against the jury's verdict, then, by necessity, he found that the verdict is not against the clear weight of the evidence.

*Jordan*, 2009 WL 112561, at *23. Such logic would be applied here as well.

Next, Defendant argues that the trial court abused its discretion by failing to grant a new trial, asserting that the jury's failure to find Plaintiff contributorily negligent was against the clear weight of the evidence. In its ruling, the trial court stated that "the verdict was supported by the evidence in terms of there not being any finding of contributory negligence on behalf of [Plaintiff]." We agree.

According to Defendant, the evidence established that, when Plaintiff exited the holster truck, she failed to set the brakes, and that by climbing back onto it when it was moving, she put herself in an unsafe position. This assertion of contributory negligence, however, is controverted by numerous pieces of evidence that were introduced at trial. In Defendant's General Claims and Litigation System Claims file, the cause of the accident is listed as "SWAYING CONTAINER BEING LIFTED." Similarly, in response to Plaintiff's interrogatory as to the cause of the accident, Defendant, again, listed "Swaying container being lifted" as the cause. These records explicitly denote that Plaintiff's injury—in Defendant's own words—was caused by a swaying container being lifted, not by Plaintiff's alleged failure to set the holster truck's brakes or by her climbing back onto the truck.

Moreover, other internal records indicate that neither setting the brakes nor climbing back onto the holster truck is addressed by a specific rule issued by Defendant. In an email exchange between Doug Gage, senior manager of hub operations at Memphis Intermodal Terminal, and Ryan Perry, Defendant's Southeast Regional Manager as well as Mr. Gage's direct supervisor, Mr. Perry inquired: "Do we have specific written instructions against getting out of your vehicle during live lifting operations? Or standing on the catwalk? Do we have specific written instructions about engaging the brakes on the holster?" Mr. Gage's response: "I do not believe there is a written rule on any of these, they are best practices."

Other witness testimony supported the above proposition, as well—that the accident was caused by a swaying container rather than by Plaintiff's alleged failure to set the brakes or by her climbing back onto the holster truck. Several witnesses testified that, when lifting containers from the holster trucks, the crane operator is never to lift it straight up, because such a lift could cause a pendulum effect. Several of these same

witnesses and others also testified that, if the lifting procedure is performed correctly, the container being lifted will never swing back and hit the holster truck. It is undisputed that the container being lifted by Mr. Carnell swung into the back of the holster truck and struck Plaintiff. Accordingly, from this evidence, a jury could reasonably conclude that Mr. Carnell performed an improper lifting procedure, causing the container to swing and strike the holster truck and Plaintiff. This conclusion can be supported by additional evidence. On the night of the accident, Mr. Carnell was operating a *production* crane. Defendant's internal documents reflect, however, that Mr. Carnell was never officially certified to operate a production crane. Mr. Carnell's Crane Operator Certification, dated June 13, 2014, contains two handwritten notations: "Will need more experience on production side" and "Stacking crane only – In a few weeks can do the production crane." According to Mr. Carnell, he understood these comments to mean that he could operate a production crane in three weeks. But, according to Andrew Jenkins' testimony, director of system safety for the hub and facility operations for Defendant, Mr. Carnell was never formally released or certified as a crane operator for a production crane.

There is also photographic evidence that one of the holster truck brakes was set. Another photograph from the same exhibit collection shows skid marks—allegedly from the holster truck operated by Plaintiff—which suggests that the truck was dragged by the crane. At trial, Mr. Carnell testified that, after he exited the crane and rushed to Plaintiff, he set both brakes in the holster truck. During his deposition, however, he testified that he did not set either of the brakes. Plaintiff, too, was adamant that Mr. Carnell did not set the brakes. Regardless, Willie Hamilton, one of Plaintiff's coworkers, testified that a holster truck can be dragged even if both brakes have been set. Considering all of the evidence presented to it, a jury could reach the reasonable conclusion that Plaintiff—not Mr. Carnell—set the one brake and that Mr. Carnell, as a result of his improper lift procedure, dragged the holster truck.

Defendant also argues that, in denying its motion for new trial, the trial court erroneously relied on legally insufficient evidence. Specifically, Defendant asserts that "the trial court's denial hinged exclusively on a single piece of unsupported evidence"— the skid mark photograph referenced above. Defendant's assertion is untenable. The trial court's decision did not "hinge exclusively" on the photograph because it considered all of the evidence discussed heretofore; and the photograph is not "unsupported" or "insufficient" evidence because, as part of an exhibit received and marked as evidence, the photograph itself was evidence.

After our review of the record, and for the reasons discussed above, we are of the opinion that a reasonable juror could reach the challenged verdict, and, as such, a new trial is improper. Accordingly, the trial court did not abuse its discretion in denying Defendant's motion for new trial.

## B. Evidentiary Issues

Defendant's second assignment of error is that the trial court improperly limited certain evidence that, according to Defendant, would support its contributory negligence defense.

The first evidentiary issue relates to the deposition testimony of Mr. Carnell. As the record indicates, and as previously discussed, after Mr. Carnell had testified that he set both of the holster truck brakes, Plaintiff impeached him with testimony from his deposition wherein he claimed that he never set either of the brakes. On re-direct, the trial court rejected Defendant's attempt to offer a subsequent portion of Mr. Carnell's deposition testimony in which he testified that he did remember pulling both brakes in the holster truck. On appeal, Defendant asserts that the trial court's decision to exclude the subsequent portions of Mr. Carnell's deposition testimony contradicted two different rules—(1) the prior consistent statement rule and (2) the rule of completeness—thereby prejudicing Defendant. We will address each rule and its alleged applicability in turn.

After our review of the relevant provisions of Tennessee law, we are of the opinion that the rule for prior consistent statements is inapplicable here. Tennessee Rule of Civil Procedure 32.01 provides that "[a]ny deposition may be used by any party for the purpose of contradicting or impeaching the testimony of deponent as a witness." Tenn. R. Civ. P. 32.01(1). Contrast this language with that of Federal Rule of Civil Procedure 32, which provides that "[a]ny party may use a deposition to contradict or impeach the testimony given by the deponent as a witness, *or for any other purpose* allowed by the Federal Rules of Evidence." Fed. R. Civ. P. 32(a)(2) (emphasis added).[7] While Federal Rule of Civil Procedure 32 indicates that a deponent-witness may be impeached *and* rehabilitated by that deponent-witness's deposition testimony, Tennessee Rule of Civil Procedure 32.01 maintains that deposition testimony—as it pertains to the deponent-witness—may be used *only* for impeachment purposes. Accordingly, the trial court's decision to exclude Mr. Carnell's deposition testimony did not violate the rule for prior consistent statements.

The rule of completeness can be found in both Tennessee rules of evidence and procedure. Tennessee Rule of Evidence 106 provides that "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." Tenn. R. Evid. 106. Likewise, Tennessee Rule of Civil Procedure 32.01(4) provides that "[i]f only part

---

[7] One such purpose can be found in Federal Rule of Evidence 801(d)(1), which provides that a prior consistent statement may be admissible—as an exclusion to hearsay—either "to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying" or "to rehabilitate the declarant's credibility as a witness when attacked on another ground[.]" Fed. R. Evid. 801(d)(1)(B)(i)-(ii).

of a deposition is offered in evidence by a party, an adverse party may require the introduction at that time of any other part which ought in fairness to be considered contemporaneously with it." Tenn. R. Civ. P. 32.01(4). Plaintiff seizes upon the language conveying contemporaneousness, asserting that the rule of completeness should have been applied, if at all, "at that time" when Mr. Carnell was impeached by his own deposition testimony. According to Plaintiff, because Defendant "sat silent" for the remainder of Plaintiff's cross-examination of Mr. Carnell, the rule of completeness is inapplicable. This Court, however, has ruled otherwise. Addressing the rule of completeness in *Wilkes v. Fred's, Inc.*, we noted:

> [T]he rule regards the timing of the introduction of other portions of the deposition and reflects rule 106 of the Tennessee Rules of Evidence. Additionally, however, if the trial court determines that fairness does not demand that the various portions be considered at the same time, admissible portions of the deposition may be introduced during the other party's case-in-chief or on rebuttal.

*Wilkes v. Fred's, Inc.*, No. W2001-02393-COA-R3-CV, 2002 WL 31305202, at *4 (Tenn. Ct. App. Aug. 20, 2002). Here, the trial court never made a determination that "fairness demand[ed] that the various portions be considered at the same time[.]" However, while Defendant should not have been prohibited from introducing the subsequent portion of Mr. Carnell's deposition testimony on re-direct, we are of the opinion that such error was harmless.

Tennessee Rule of Appellate Procedure 36 provides that "[a] final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process." Tenn. R. App. P. 36(b). The record in this case shows that during cross-examination—but before he was impeached—Mr. Carnell acknowledged that he had told Ms. Foster that he set both brakes.[8] Plaintiff then impeached Mr. Carnell with his deposition testimony, wherein he admitted he did not set the brakes. On re-direct, Defendant sought to introduce the following testimony from Mr. Carnell's deposition:

---

[8] The exact exchange is as follows:

> Q: [Y]ou pulled both brakes up?
> A: Yes, sir.
> Q: Now, my question though, you told that to Ms. Foster after you were with her in the crane, photographs were being taken, you told her that in your statement; right?
> A: Yes.

Q:  Now, you indicate [in your statement to Ms. Foster] that you set both brakes when you got to the holster truck.  Do you see that?
. . . .
A: Yes.  Yes.  I see that.
Q:  So does that refresh your recollection that when you got into the holster truck, is it your recollection that you set both brakes?
A:  Okay.  Yes.
Q: And that includes both the red and white knobs shown in Exhibit 16?
A:  Correct.
Q:  That's what you were referencing, when you got down there, you would have pulled both of those; correct?
A:  Correct.

Defendant asserts that, had it been permitted to introduce this testimony, it would have clarified Mr. Carnell's trial testimony and "combat[ted] the jury's misimpression that Carnell had changed his testimony about setting the brakes and, thus, lacked credibility[.]"  We disagree.  The above-quoted portion of Mr. Carnell's deposition testimony would neither clarify his trial testimony nor restore his credibility.  In essence, Defendant wished to introduce a portion of Mr. Carnell's deposition testimony, the substance of which the jury had already heard because Mr. Carnell himself had already stated it on cross-examination.  Moreover, the above-quoted portion of Mr. Carnell's deposition testimony directly conflicts with the physical evidence.  Mr. Carnell testified that he set both brakes, during his deposition, however, Mr. Carnell also testified that he did not set the brakes or even look at the brakes.  Neither of the two sides of his testimony, however, can be reconciled with the photographs taken by Ms. Foster, which were introduced into evidence and which clearly show that only one of the two brakes was set.  Under Tennessee Rule of Appellate Procedure 36(b), an error is prejudicial if it "more probably than not" affected the judgment.  For the foregoing reasons, we are of the opinion that limiting Defendant from introducing the subsequent portion of Mr. Carnell's deposition testimony did not affect the judgment and was, therefore, harmless error.

The second evidentiary issue relates to the testimony of Defendant's human factors expert, Dr. Arndt.  As the record indicates, the December 2, 2016 scheduling order set April 28, 2017 as the deadline for filing all motions regarding expert witnesses. At trial, Defendant tendered Dr. Arndt as an expert in the area of human factors, and he was received as such without objection.  Plaintiff never filed a motion in limine regarding Defendant's expert witnesses by the scheduling order deadline, but when Defendant asked Dr. Arndt at trial to "share with us what your opinions were in this case[,]" Plaintiff objected.  Specifically, Plaintiff maintained that Defendant was "going to have [Dr. Arndt] testify that, in his opinion, [Plaintiff] violated the brake rule, 12.9, and had she complied with that rule, the truck wouldn't have rolled."  Thus, according to Plaintiff, Dr. Arndt's testimony should be limited to human factors issues and not rule violation issues.

- 11 -

Defendant took issue with Plaintiff's objection, arguing that it should have been raised by the scheduling order deadline. The trial court ultimately sustained Plaintiff's objection.

We review a trial court's decision regarding the admissibility of expert witness testimony under an abuse of discretion standard. As discussed by the Tennessee Supreme Court:

> Generally, questions pertaining to the qualifications, admissibility, relevancy, and competency of expert testimony are matters left to the trial court's discretion. We may not overturn the trial court's ruling admitting or excluding expert testimony unless the trial court abused its discretion. A trial court abuses its discretion if it applies an incorrect legal standard or reaches an illogical or unreasonable decision that causes an injustice to the complaining party.

*Brown v. Crown Equip. Corp.*, 181 S.W.3d 268, 273 (Tenn. 2005) (internal citations omitted). "The trial court, therefore, must determine that the expert testimony is reliable in that the evidence will substantially assist the trier of fact to determine a fact in issue and that the underlying facts and data appear to be trustworthy." *Id.* at 274. "Moreover, we emphasize that it is a trial court's responsibility to act as a gatekeeper regarding the admissibility of expert testimony." *State v. Lowe*, 552 S.W.3d 842, 871 (Tenn. 2018). "[T]he trial court must assure itself that the [expert's] opinions are based on relevant scientific methods, processes, and data, and not upon an expert's mere speculation." *Id.* (internal quotations and citations omitted). Plaintiff argues on appeal that her failure to file a motion in limine objecting to certain of Dr. Arndt's opinions prior to trial does not preclude the trial court from enforcing "its own independent responsibility as a 'gatekeeper.'" We agree.

In sustaining Plaintiff's objection and limiting Dr. Arndt's testimony, the trial court maintained that it could not find a connection between his qualifications as a human factors expert—which, in Dr. Arndt's own words, involves the study of the "capabilities and limitations of people as they interact with tools, technology, their environment, organizations, and other people and information"—and his opinion that "[t]he incident would have been avoided had [Plaintiff] followed the warning placard in the truck[.]" After our review of the record, we agree with the trial court. Dr. Arndt's opinion outside of his area of expertise was mere speculation and, in the words of the trial court, was "[not] going to be helpful to the jury". Accordingly, we are of the opinion that there was no error in the trial court's limiting Dr. Arndt from opining as to Plaintiff's alleged violation of a company rule or practice.

## C. Pain and Suffering Damages

Defendant's final assignment of error is that the trial court erred in denying its motion for new trial or remittitur because the jury's award of $3,000,000 for future pain and suffering damages was excessive and a result of passion and prejudice. We disagree.

As discussed above, in order to grant a new trial in a FELA case tried in state court, the trial court must apply the federal standard and find that the verdict is against the clear weight of the evidence. "The question of whether a jury verdict is excessive is 'resolved by the discretionary consideration of the trial judge.'" *Jordan*, 2009 WL 112561, at *17 (quoting *Cutter v. Cincinnati Union Terminal Co.*, 361 F.2d 637, 639 (6th Cir. 1966)). "In a FELA case, a 'verdict with judgment thereon generally will not be disturbed on grounds of excessiveness unless it clearly appears to be unsupported by the evidence.'" *Id.* (quoting *Palmer v. Norfolk S. Ry. Co.*, No. 03A01-9309-CV-00313, 1994 WL 111037, at *5 (Tenn. Ct. App. Mar. 30, 1994)).

In its ruling, the trial court stated that the $3,000,000 was not excessive "given the extent of [Plaintiff's] permanent injuries, the nature of her physical injuries, and the PTSD[.]" As to the effect the accident had on her life, Plaintiff testified: "It's pretty much affected everything I do." Plaintiff also testified as to her feeling of vulnerability, her inability to sleep, and her general lack of enjoyment in everyday activities. Regarding her PTSD, Plaintiff detailed her specific triggering events and her coping mechanisms for them. Dr. Joseph Hunter, Plaintiff's primary doctor, testified that the accident permanently disabled Plaintiff from being able to return to her regular occupation. Dr. Michael Steur, an interventional pain management doctor to whom Dr. Hunter referred Plaintiff, testified that his future prognosis regarding Plaintiff's injuries was that they would be permanent, and that she would more than likely need between two and five SI joint injections annually. Upon reviewing this testimony and other evidence in the record, we find no evidence that the jury's verdict was the result of passion, prejudice, or unaccountable caprice. The evidence supports the jury's award of $3,000,000 for Plaintiff's future pain and suffering, and, accordingly, the trial court did not abuse its discretion in denying Defendant's motion for new trial or remittitur.

### CONCLUSION

For the foregoing reasons, the trial court's Order on Jury Verdict, as remitted by the trial court, is affirmed.

_____
ARNOLD B. GOLDIN, JUDGE

- 13 -